IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WENDI HATFIELD,<br><br>    Plaintiff,<br><br>v.<br><br>THE COTTAGES ON 78TH COMMUNITY ASSOCIATION, a Utah corporation; DREW KEDDINGTON, an individual; DAVE RUPRECHT, an individual; MATTHEW MEDFORD, an individual; MILLER HARRISON, LLC, a Utah limited liability company; DOUGLAS SHUMWAY, an individual; MICHELLE POHLMAN, an individual; and PMI OF UTAH, LLC, a Utah limited liability company,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br>Case No. 2:19-CV-964 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on a Motion to Strike filed by Defendants The Cottages on 78th Community Association, Drew Keddington, Mathew Medford, Michelle Pohlman, and PMI of Utah, LLC; a Motion to Strike filed by Defendant Dave Ruprecht; a Motion for Partial Dismissal and Motion to Strike filed by Miller Harrison, LLC and Douglas Shumway; and a Motion to Dismiss filed by Ruprecht. For the reasons discussed below, the Court will grant in part and deny in part the Motions to Strike and grant the Motions to Dismiss.

I.  BACKGROUND

Plaintiff is a resident of Midvale, Utah. Defendant The Cottages on 78th Community Association (the "Association") is a homeowners association of which Plaintiff is a member. The Association acts through a five-member Management Committee (the "Board"). Defendants

1

Keddington and Ruprecht were Board members during the relevant time, and Defendant Medford was a member of the Association. Defendant PMI of Utah ("PMI") served as the Association's property manager. Defendant Pohlman (a/k/a Michelle Ainge) was an employee of PMI and served as manager for the Association. Douglas Shumway and the law firm of Miller Harrison, LLC (collectively, the "Attorney Defendants") were hired by the Association to provide legal counsel and representation to the Association, the Board, PMI, and Pohlman.

Plaintiff has been involved in various disputes with the Association, the Board, PMI, and the Attorney Defendants. In this action, Plaintiff alleges violations of the Fair Housing Act, invasion of privacy, defamation, tortious interference with economic relations, and civil conspiracy.

Defendants now seek to strike Exhibits 4 and 5 to the Complaint and related allegations, arguing they are protected by work product and attorney client privileges. Additionally, the Attorney Defendants seek dismissal of Plaintiffs' claims for civil conspiracy and tortious interference. Finally, Ruprecht seeks dismissal of Plaintiff's civil conspiracy claim against him.

## II.  MOTIONS TO STRIKE

Defendants seek to strike Paragraphs 27-38 of Plaintiff's Complaint and Exhibits 4 and 5 to the Complaint. Defendants argue that these documents are protected by the attorney-client and work product privileges.

Federal Rule of Civil Procedure 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Motions to strike under Rule 12(f) are disfavored by the federal courts and are infrequently granted.[1]  However, a court may strike evidence that would be inadmissible.[2]

The party "assert[ing] the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is applicable."[3]  The Court's analysis begins with the work product doctrine, which "is broader than and distinct from the attorney-client privilege."[4]  Under Rule 26, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."[5]

Plaintiff first argues that Exhibits 4 and 5 are not protected work product because they were not produced or assembled by an attorney.  However, by its terms, Rule 26 applies to documents that are prepared by or for a party or its representative.  Thus, the fact the emails were not produced or assembled by an attorney is not determinative.  "Rule 26(b)(3)'s work-product doctrine extends past attorneys to a party or any representative acting on his behalf."[6]

Plaintiff further argues that no litigation was impending or anticipated.  The work product doctrine embodied in Rule 26 "protects materials prepared for any litigation or trial as long as

---

[1] 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380.

[2] *Id.* § 1382.

[3] *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) (internal quotation marks omitted).

[4] *In re Foster*, 188 F.3d 1259, 1272 (10th Cir. 1999).

[5] Fed. R. Civ. P. 26(b)(3)(A).

[6] *Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1185 (10th Cir. 2013) (internal quotation marks omitted).

3

they were prepared by or for a party to the subsequent litigation."[7]  Materials prepared with mixed purposes, such as a litigation and business purpose, are protected only if "the primary motivating purpose behind the creation of the [materials was] to assist in pending or impending litigation."[8]

The Court finds that Exhibit 4 was not created with the primary purpose to assist in possible future litigation.  That email chain shows that its purpose was to gather information that could be used in a cease and desist letter that Defendant PMI was planning to send to Plaintiff.  The only reference to possible future litigation is from Defendant Keddington, who stated he was prepared to send out a community assessment letting the community know that they "need to do so in preparation for potential legal action against a resident(s)."[9]  While this statement discusses the possibility of the Board taking legal action against Plaintiff, it was made in the context of obtaining information that could be used in a cease and desist letter.  "The inchoate possibility, or even likely chance of litigation, does not give rise to work product."[10]  Thus, the fact that Mr. Keddington thought future litigation might occur is not sufficient.

Exhibit 5 was similarly not created with the primary motivating purpose of assisting potential litigation. The email started when Defendant PMI requested a motion to issue a cease and desist letter.  The Board members then voted, expressed their various concerns, and added

---

[7] *FTC v. Grolier Inc.*, 462 U.S. 19, 25 (1983).

[8] *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985); *see also McEwen v. Digitran Sys., Inc.*, 155 F.R.D. 678, 682 (D. Utah 1994) (applying primary motivating purpose test).

[9] Docket No. 2 Ex. 4.

[10] *Ledgin v. Blue Cross & Blue Shield of Kan. City*, 166 F.R.D. 496, 498 (D. Kan. 1996).

their comments to the cease and desist letter being drafted.  As with Exhibit 4, there is mention of hypothetical future litigation, but the email chain was not created with that end in mind.  The potential future litigation was suggested as a possibility "ONLY if [Plaintiff] disregard[ed] [the] cease and desist order."[11]  As stated, this possibility is not enough to warrant protection.

    Defendants also argue that the emails are protected by attorney-client privilege.  "A party may successfully demonstrate applicability of the privilege to written communication between corporate management employees by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice."[12]  Further, "the attorney-client privilege extends to communications made within a corporation if those communications are made for the purpose of securing legal advice."[13]  "For a communication between non-attorney employees to be held privileged, it must be apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice or the document itself must reflect the requests and directions of counsel."[14]

    With these standards in mind, the Court concludes that Exhibit 4 is largely not protected by the attorney-client privilege.  The only information that is privileged is contained in the second paragraph of the December 3, 2018 email from Michelle Ainge.  Ms. Ainge states that she spoke with an attorney.  She goes on to state:

---

[11] Docket No. 2 Ex. 5.

[12] *Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06-cv-890 TS, 2011 WL 2795892, at *3 (D. Utah July 14, 2011) (internal quotation marks and citation omitted).

[13] *Id.* (internal quotation marks and citation omitted).

[14] *Adams v. Gateway, Inc.*, No. 2:02-cv-106 TS, 2003 WL 23787856, at *11 (D. Utah Dec. 30, 2003).

> We have decided to move forward by sending Wendy a letter of cease and desist.  The attorney would like to have this drafted ASAP.  We need your help to compile a list of Home Owner (sic) who have expressed that Wendy has harassed them.  If possible, please include dates and what the harassment was in regard to.  Also, if there are just general recurrences she is taking part in that fall under the category of "Nuisance."
>
> If you can also please include her "Friends" who have been acting out similarly, we would like to send them firm letters of intent as well.[15]

This statement appears to reflect the requests and directions of counsel.  Therefore, it is privileged and this portion of Exhibit 4 will be stricken, along with Paragraph 37(b)(iii)–(vi) of the Complaint.  The remainder of the email and the accompanying allegations may remain.

Plaintiff concedes that a portion of Exhibit 5 is privileged.  Specifically, Plaintiff states that the portion of the email chain where Ms. Ainge reports what the Board's attorney told her with respect to certain questions that had been raised.  Plaintiff nevertheless argues that these statements are not privileged.  Generally, "[w]here business and legal advice are intertwined, the legal advice must predominate for the communication to be protected."[16]

Here, it cannot be said that the predominate purpose of the email chain was to obtain legal advice.  As discussed above, the primary purpose of the email chain was to obtain a vote and discussion on the decision to send Plaintiff a cease and desist letter.  Thus, with the exception of that portion of the emails that Plaintiff concedes is protected, Exhibit 5 need not be stricken.

Plaintiff further argues that, as a member of the association, she is entitled to Exhibit 5 because it recorded a vote among the Board.  While Plaintiff may be entitled to recorded votes,

---

[15] Docket No. 2 Ex. 4.

[16] *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 292 (D. D.C. 2000).

6

she points to nothing showing that it must be in any certain form. Thus, the fact that Plaintiff might be entitled to the recorded vote does not necessarily mean that she is entitled to the email chain contained in Exhibit 5.

Plaintiff also argues that any privilege has been waived based on the disclosure of the emails to her. Defendants argue that the disclosure was inadvertent. Federal Rule of Evidence 502(b) provides that disclosure of privileged material does not operate as a waiver if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error. "The party claiming that its disclosure was inadvertent bears the burden of proving that each of the three elements of Rule 502(b) has been met . . . [including] that it took reasonable steps to prevent disclosure in the first place."[17]

Here, Defendants have presented evidence that their disclosure was inadvertent. Defendants' former counsel, Mr. Shumway, has stated that he did not intend to provide any privileged documents in response to Plaintiff's record request.

Second, Defendants have shown that they took reasonable steps to prevent disclosure. In his supplemental declaration, Mr. Shumway reports that, in response to Plaintiff's records request, he and a law clerk spent approximately 20 hours searching for responsive documents.[18] They then spent an additional three to five hours searching for potentially privileged documents, which included performing a digital keyword search that included various terms meant to

---

[17] *Cudd Pressure Control, Inc. v. N.H. Ins. Co.*, 297 F.R.D. 495, 500 (W.D. Okla. 2014) (alteration in original) (internal quotation marks and citation omitted).

[18] Docket No. 29 Ex. 1 ¶ 4.

uncover potentially privileged documents.[19] This is sufficient to demonstrate that they took reasonable steps to prevent disclosure.

Finally, Defendants took reasonable steps to rectify the error. After being informed by Plaintiff's counsel that they may have disclosed potentially privileged information, Mr. Shumway and a law clerk performed additional searches to try to locate the documents identified by Plaintiff's counsel. After not locating those documents, Mr. Shumway asked Plaintiff's counsel to identify the documents, to which he did not respond. It was not until the filing of the Complaint that Defendants were made aware of these specific documents. Based on this, the Court finds that Defendants have not waived any privilege by disclosing these documents. Therefore, the Court will grant in part the Motions to Strike and strike those portions of Exhibits 4 and 5 discussed above, along with Paragraph 37(b)(iii)–(vi) of the Complaint. The Motions are denied in all other respects.

### III.  MOTION TO DISIMSS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[20] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[21] which requires "more than an unadorned, the-defendant-unlawfully-

---

[19] *Id.* ¶ 5.

[20] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

8

harmed-me accusation."[22]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[23]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[24]  As the Court in *Iqbal* stated,

> [o]nly a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[25]

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[26] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[27]  The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[28]

### IV.  ATTORNEY DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

---

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[23] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[24] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[25] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

[26] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[27] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[28] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

The Attorney Defendants seek dismissal of Plaintiff's civil conspiracy and tortious interference with economic relations claims.

A.  CIVIL CONSPIRACY

"To prove a civil conspiracy, plaintiff must show the following elements: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[29]

Plaintiff cannot plead the first element against the Attorney Defendants as a matter of law. "An attorney, being an agent of his principal, cannot be held liable for conspiracy with his principal where the agent acts within the scope of his authority and do not rise to the level of active participation in a fraud."[30] Here, Plaintiff alleges that Shumway and Miller Harrison "were hired and paid by the Association to provide legal counsel and representation to the Association and other defendants."[31] Plaintiff further alleges that Shumway and Miller Harrison "were agents of the Association when most of the events and actions identified in this complaint occurred."[32] These allegations defeat Plaintiff's civil conspiracy claim against the Attorney Defendants.

B.  TORTIOUS INTERFERENCE

---

[29] *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987).

[30] *Astarte, Inc. v. Pac. Indus. Sys., Inc.*, 865 F. Supp. 693, 708 (D. Colo. 1994) (collecting cases); *see also Heffernan v. Hunter*, 189 F. 3d 405, 507; Ronald E. Mallen, 1 Legal Malpractice § 6:10 (2020).

[31] Docket No. 2 ¶ 13.

[32] *Id.* ¶ 14.

The Attorney Defendants also argue that Plaintiff has failed to adequately plead a claim for tortious interference with economic relations. "In order to win a tortious interference claim under Utah law, a plaintiff must . . . prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." [33]

The Attorney Defendants argue that Plaintiff has failed to plead a cognizable injury. The Court need not reach this issue because Plaintiff has failed to adequately allege that Defendants interfered with her existing or potential economic relations. Plaintiff's claim is based on a letter the Attorney Defendants sent to her employer. Plaintiff alleges that the letter included embarrassing and derogatory statements about her. However, Plaintiff makes only conclusory allegations that this letter interfered with her existing economic relations. These allegations are insufficient to state a claim. Therefore, this cause of action will be dismissed.

## V.  RUPRECHT'S MOTION TO DISMISS

Plaintiff asserts a civil conspiracy claim against Defendant Ruprecht. The allegations against Ruprecht are sparse. Plaintiff alleges that Ruprecht was an owner and member of the Association and served as a Board member and officer of the board during the time period related to the allegations in the Complaint. As such, he was an agent of the Association. Plaintiff also quotes certain statements made by Ruprecht about Plaintiff that are contained in Exhibits 4 and 5, including "She's a nuisance and a waste of all of our time and energy;" "I think the Wendi issue is substantially different from other violations and needs to be categorized as

---

[33] *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015) (internal quotation marks and citation omitted).

such;" and "My pleasure…" in response to a request for a motion to issue a cease and desist letter.

From these snippets, Plaintiff makes conclusory allegation that Ruprecht and the other Defendants had a meeting of the minds and engaged in unlawful, overt acts to accomplish various objects. These allegations are completely conclusory as they relate to Defendant Ruprecht and are devoid of further factual development. Therefore, dismissal is required.

## VI.  CONCLUSION

It is therefore

ORDERED that Defendants' Motions to Strike (Docket Nos. 49 and 62) are GRANTED IN PART AND DENIED IN PART. It is further

ORDERED that Defendants' Motions to Dismiss (Docket Nos. 29 and 33) are GRANTED.

DATED this 23rd day of April, 2020.

BY THE COURT:

_____
Ted Stewart
United States District Judge