Byron G. Martin (#8824)
Axel Trumbo (#14816)
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, Utah 84111
Telephone: (801) 532-7080
Facsimile: (801) 596-1508
bmartin@strongandhanni.com
atrumbo@strongandhanni.com

*Attorneys for Cottages on 78th Community Association, Drew Keddington, Matthew Medford, Michelle Pohlman and PMI of Utah, LLC*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| WENDI HATFIELD,<br><br>Plaintiff,<br><br>vs.<br><br>THE COTTAGES ON 78TH COMMUNITY ASSOCIATION, a Utah corporation; DREW KEDDINGTON, an individual; DAVE RUPRECHT, an individual; MATTHEW MEDFORD, an individual; MILLER HARRISON, LLC, a Utah limited liability company; DOUGLAS SHUMWAY, an individual; MICHELLE POHLMAN, an individual; and PMI OF UTAH, LLC, a Utah limited liability company;<br><br>Defendants.<br><br>THE COTTAGES ON 78TH COMMUNITY ASSOCIATION, a Utah corporation; DREW KEDDINGTON, an individual; MICHELLE POHLMAN, an individual; and PMI OF UTAH, LLC, a Utah limited liability company;<br><br>Counterclaim Plaintiffs, | **AMENDED ANSWER BY THE COTTAGES ON 78th COMMUNITY ASSOCIATION, DREW KEDDINGTON, MATTHEW MEDFORD, MICHELLE POHLMAN, AND PMI OF UTAH LLC**<br><br>**AND**<br><br>**COUNTERCLAIM**<br><br>Civil No. 2:19-cv-00964-TS<br><br>Magistrate Judge Cecilia M. Romero<br>Judge Ted Stewart<br><br>**Jury Demand** |

1

| | |
|---|---|
| vs.<br><br>WENDI HATFIELD,<br><br>       Counterclaim Defendants | |

The Cottages on 78th Community Association ("the HOA"), Drew Keddington, Matthew Medford, Michelle Pohlman, and PMI of Utah LLC ("PMI"), referred to herein together as "Defendants," hereby respond to Plaintiff Wendi Hatfield's Complaint.

Responding to the numbered paragraphs of Plaintiff Hatfield's Complaint, Defendants respond as follows:

1.     Defendants deny the allegations asserted by Hatfield in ¶ 1 of her Complaint.

2–3.    Defendants admit the allegations in ¶¶ 2–3.

4.     Defendants admit the HOA is the association of members connected with The Cottages on 78th. Defendants deny the HOA governs the project—the HOA is a private association. Defendants deny all other allegations in ¶ 4.

5–6.    Defendants admit the allegations in ¶¶ 5–6.

7.     Defendants admit the allegations in ¶ 7.

8.     Defendants admit the allegations in ¶ 8.

9.     The allegations in ¶ 9 are not directed toward Defendants and require no response. If a response is required, Defendants admit the allegations in ¶ 9.

10.    Defendants admit the allegations in ¶ 10.

11.    Defendants admit Pohlman was a PMI employee and assisted with PMI's contractual HOA property management responsibilities at all relevant times and since PMI began its

services in October 2018. Defendants deny all other allegations in ¶ 11.

12.     Defendants admit the allegations in ¶ 12.

13.     Defendants admit that at all relevant times, Shumway and the law firm Miller Harrison were hired and paid by the HOA to provide legal counsel and representation to and for the benefit of the HOA. Defendants deny all other allegations in ¶ 13.

14.     Defendants admit that PMI, Pohlman, Keddington, Ruprecht, Miller Harrison, and Shumway were agents of the HOA within the limited scope of their respective agencies, at certain times. Defendants deny all other allegations in ¶ 14.

15.     Defendants admit the Court has jurisdiction under 28 U.S.C.A. §§ 1331 and 1367. Defendants deny the Court has jurisdiction under 42 U.S.C.A. § 3613(a). Defendants deny all other allegations in ¶ 15.

16.     Defendants admit venue is proper in the District of Utah. Defendants deny their acts or omissions gave rise to any valid claims.

17.     Defendants admit that on August 13, 2019, Hatfield filed a Fair Housing complaint alleging the HOA, Keddington, and PMI had violated the Fair Housing Act. Defendants deny the complaint alleged Pohlman had violated the Fair Housing Act. Defendants deny all other allegations in ¶ 17.

18.     Defendants admit that, on August 27 and 28, 2019, Hatfield wrongfully instructed the HOA's insurance agent to submit claims to the HOA's insurer. Hatfield misled the HOA's insurance agent into believing the instruction to submit the claims to the insurer came via an authorized representative of the HOA. Defendants deny all other allegations in ¶ 18.

19.     Defendants admit Shumway sent a letter to a purported representative of Hat-

field's employer on September 6, 2019, and that Exhibit 1 contains a true and correct copy of the letter and attachments. Defendants deny all other allegations in ¶ 19.

20.     Defendants admit Hatfield's employer has had no involvement in any dealings between Hatfield and the HOA based on confirmation from counsel for her employer. Defendants deny Shumway's letter involved Hatfield's employer in the dealings. Defendants deny all other allegations in ¶ 20.

21.     Defendants admit paragraph ¶ 21.

22.     Defendants admit the two prior letters were sent, but deny the letters contained false, embarrassing, or misleading accusations and allegations. Defendants deny all other allegations in ¶ 22.

23.     Defendants admit the allegations in ¶ 23, except Defendants deny the characterization of the effect of that letter.

24–27. Defendants deny the allegations in ¶¶ 24–27.

28.     Defendants admit the allegations in ¶ 28. But Defendants deny any implication this was the first notice of the need for a special assessment.

29–30. Defendants admit that PMI through Pohlman, on behalf of the HOA, assisted in preparing and distributing the letter. Defendants deny all other allegations in ¶¶ 29–30 and affirmatively state that neither Pohlman nor PMI had decision-making authority in regard to the fact or content of the same and at all times followed the board's direction regarding that letter.

31.     Defendants admit that Pohlman, along with others, believed a letter should be sent. Defendants deny all other allegations in ¶ 31.

32.     Defendants admit the allegations in ¶ 32.

33.     Defendants admit the allegations in ¶ 33.

34.     Defendants admit the allegations asserted in ¶ 34, but Defendants deny any wording in the letter was bolded and deny the wording should be read out of context.

35.     Defendants admit the allegations in ¶ 35.

36.     Defendants admit that Pohlman, on behalf of the HOA, assisted in preparing and/or distributing the notice. Defendants deny all other allegations in ¶ 36 and affirmatively state that neither Pohlman nor PMI had decision-making authority in regard to the fact or content of the same and at all times followed the board's direction regarding that notice.

37.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 37.

38.     Defendants admit the allegations in ¶ 38.

39.     Paragraph 39 is an incorrect and incomplete reproduction of the assessment notice, and Defendants therefore deny the allegations in ¶ 39. Defendants admit the notice stated what is produced in Exhibit 3.

40–42. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in ¶¶ 40–42.

43.     Defendants admit the allegations in ¶ 43.

44–49. Defendants deny that the HOA's statements at the October meeting were contrary to the September letter. Hatfield's detailed quotations of what was said at the meeting lead Defendants to conclude she has a recording of the meeting. Defendants object to admitting or denying the allegations in ¶¶ 44–49 without the benefit of reviewing the recording to refresh memories, evaluate exact wording, and consider the context in which statements were made. Defend-

ants believe statements were made on the subjects identified but otherwise lack sufficient information and knowledge to form a belief as to the truth of the allegations in ¶¶ 44–49.

50.     Defendants deny the allegations in ¶ 50.

51.     Defendants object to admitting or denying the allegations in ¶ 51 without the benefit of reviewing the recording to refresh memories, evaluate exact wording, and consider the context in which statements were made. Defendants believe statements were made on the quoted subject matter but otherwise lack sufficient information and knowledge to form a belief about the truth of the allegations in ¶ 51.

52.     Defendants object to admitting or denying the allegations asserted in ¶ 52 without the benefit of reviewing the recording to refresh memories, evaluate exact wording, and consider the context in which statements were made. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 52.

53.     Defendants deny the allegations in ¶ 53.

54.     Defendants object to admitting or denying the allegations asserted in ¶ 54 without the benefit of reviewing the recording to refresh memories, evaluate exact wording, and consider the context in which statements were made. Defendants believe statements were made on the subject matter identified in the quoted material in ¶ 54 but otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 54.

55–61. Defendants deny the allegations in ¶¶ 55–61.

62.     Defendants deny the HOA and its agents harmed Hatfield. Defendants admit the HOA hasn't cancelled the special assessment. Defendants are unclear about which statements Hatfield claims were not retracted. Defendants therefore lack knowledge or information suffi-

cient to form a belief about the truth of all other allegations in ¶ 62.

63–66. Defendants deny the allegations in ¶¶ 63–66.

67.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 67.

68.     Defendants incorporate by reference the above responses in response to ¶ 68.

69.     Defendants deny the allegations in ¶ 69.

70.     The allegations in ¶ 70 are not directed toward Defendants and require no response. If a response is required, Defendants deny the allegations asserted in ¶ 70.

71–74. Defendants deny the allegations in ¶¶ 71–74.

75–76. The allegations in ¶¶ 75–76 are not directed toward Defendants and require no response. If a response is required, Defendants deny the allegations in ¶¶ 75–76.

77–84. Defendants deny the allegations in ¶¶ 77–84.

85.     Defendants incorporate by reference the above responses in response to Plaintiff's paragraph 85.

86.     Defendants deny the allegations in ¶ 86.

87.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 87.

88.     Defendants deny the allegations in ¶ 88.

89.     Defendants admit that the exhibits included the identified materials but deny the allegations and claims were embarrassing.  Defendants deny the remaining allegations in ¶ 89.

90–92. Defendants deny the allegations in ¶¶ 90–92.

93.     Defendants lack knowledge or information sufficient to form a belief about the

truth of the allegations in ¶ 93.

94–99.  Defendants deny the allegations in ¶¶ 94–99.

100.    Defendants incorporate by reference the above responses in response to Hatfield's ¶ 1, page 17, and note that Hatfield's paragraph numbering reverts to 1 et seq. Defendants therefore correspond their responses accordingly.

101.    Defendants deny the allegations in ¶ 2, page 17.

102.    Defendants deny the allegations in ¶¶ 3–15, pages 17–23, as to these answering Defendants, and lack sufficient and knowledge and information to form a belief as to the remaining allegations.

103.    Per the Court's memorandum decision on April 23, 2020, filed as Document 67, Hatfield's claim for tortious interference was dismissed because she failed to state a claim for which relief can be granted. Therefore, no response is required to ¶¶ 16–25, pages 23–24. If a response is required, Defendants deny the allegations in ¶¶ 16–25, pages 23–24 as to these answering Defendants, and lack sufficient and knowledge and information to form a belief as to the remaining allegations.

104.    Defendants incorporate by reference the above responses in response to Plaintiff's ¶ 26, page 24.

105.    Defendants deny the allegations in ¶¶ 27–36, pages 24–26.

106.    Defendants make no response to the allegations asserted in ¶ 37(b)(iii)–(vi), page 28; these were stricken by the Court because they disclose communications protected under the attorney-client privilege. Nor do defendants respond to the portion of Exhibit 4 the Court struck as privileged. Defendants deny that any statements in Exhibit 4 or quoted in ¶ 37 were made with

the intent, object, or purpose Hatfield alleges. Defendants deny all other allegations in ¶ 37, pages 26–28.

107.    Defendants make no response to the portion of Exhibit 5 the Court struck because it contains communications protected under the attorney-client privilege. Defendants deny that any statements in Exhibit 5 or quoted in ¶ 38 were made with the intent, object, or purpose Hatfield alleges. Defendants deny all other allegations in ¶ 38, pages 28–31.

108.    Defendants deny the allegations in ¶ 39, page 31.

109.    The allegations in ¶ 40, page 31, are not directed toward Defendants and require no response. Additionally, the Court dismissed this claim. If a response is required, Defendants lack sufficient knowledge and information to form a belief as to the truthfulness of the allegations in ¶ 40, page 31.

110.    Defendants deny the allegations in ¶¶ 41–44, pages 31–32.

111.    Defendants deny that Hatfield should receive any of the relief she prays for in her Prayer for Relief.

112.    Defendants deny all allegations—whether express, implied, or assumed—that they do not specifically admit in this Answer.

## I.       First Affirmative Defense

Hatfield's claims should be dismissed or reduced because she doesn't state a claim upon which relief can be granted. Hatfield's claims are conclusory as to essential elements and are unsupported by well-pled facts. For example, Hatfield doesn't plead a discriminatory housing practice and the Act doesn't apply to a non-possessory nuisance dispute between an HOA and someone who has already purchased a home. The defamation claim asserts statements that were non-

actionable opinion or not uttered by Defendants. The invasion-of-privacy claim doesn't allege an actionable intrusion into a private affair, but rather merely a communication with an employer about matters published and publicized by Hatfield. And the conspiracy claim fails because (1) the other claims fail; (2) no underlying tort is asserted against Medford; (3) Keddington, Pohlman, and PMI couldn't conspire with HOA as its agents; and (4) Hatfield fails to assert false statements and deception with particularity under Rule 9. Without limitation, Hatfield's complaint also fails to state a claim for the reasons stated in the affirmative defenses below.

## II.    Second Affirmative Defense

Hatfield's claims should be dismissed or reduced under the doctrines of estoppel, unclean hands, and the principle that no party may benefit from her own wrong acts. For example, Hatfield attempts to recover for lost reputation in her community when it was she—in attempts to smear Keddington's and others' reputations—who published to the community her behavior and disputes. As another example, she attempts to recover damages and attorney fees based on a Fair Housing complaint she filed in bad faith.

## III.    Third Affirmative Defense

Defendants deny any fault. Furthermore, Defendants can be liable only for their individual proportionate share of fault. *See* Utah Code Ann. §§ 78B-5-817–824. The fault, if any, allocated to Defendants should be so limited. The jury should be instructed to record on the Special Verdict Form separate percentages of fault of each party and all identified nonparties. Fault must be allocated in accordance with Utah Code sections 78B-5-817–824.

Hatfield's recovery, if any, is reduced by her own percentage of fault for negligently causing her alleged harm or otherwise being at fault. For example, she disclosed to the community her dispute with the HOA and others, she sent misleading communications to the HOA's insurance agent, and she became a nuisance to many community members through her continuous reporting of rule violations and harassment. Hatfield's recovery, if any, is barred entirely if her fault equals or exceeds the fault of all defendants and persons immune from suit.

## IV.     Fourth Affirmative Defense

Hatfield's injuries and damages, if any, are the proximate result of the negligence or other actionable fault of nonparties over whom Defendants had insufficient control or right of control. Defendants hereby place all parties on notice that they reserve the right to seek an apportionment of fault pursuant to Utah Code section 78B-5-818(4)(a) to such other nonparties, as Defendants become aware of a factual and legal basis to do so.

## V.     Fifth Affirmative Defense

Hatfield's claimed damages should be denied or reduced because they result from preexisting or subsequent injuries and conditions for which Defendants are not responsible, including, without limitation, any pre-existing anxiety or other mental health condition which she is claiming was caused by the conduct of Defendants in this case.

## VI.     Sixth Affirmative Defense

Hatfield's claims should be dismissed or reduced if her injuries or damages were caused by intervening and superseding causes beyond Defendants' control.

## VII.     Seventh Affirmative Defense

Hatfield's claims should be dismissed or reduced under the doctrines of waiver, laches,

and any applicable statute of limitations. For example, the discrimination claim is premised on an untimely allegation of religious discrimination. *See*, *e.g.*, Utah Code Ann. § 57-21-9(1), 12(1); 42 U.S.C. §§ 3610(a)(1)(A)(i), 3613(a)(1).

## VIII.   Eighth Affirmative Defense

Hatfield's claims should be dismissed or reduced because Defendants' conduct and statements were absolutely or qualifiedly privileged and justified in furthering their legitimate business interests, in protecting rights of self, in protecting others whom Defendants had a duty to protect (in this case, themselves and other homeowners who were subject to Hatfield's harassment and breaches of the CC&Rs for nuisance under Section 10.3), in stating the truth, in expressing opinion, in exercising all constitutional rights of free speech, and in otherwise pursuing legitimate and privileged objectives.

Any statements made by Defendants were true and not defamatory, but even if defamatory and not true (which is denied), the statements are subject to mitigating or exonerating circumstances to be shown at trial, including, but not limited to, good faith belief, opinion, fairly debatable interpretations, fair comment, protection of others, and protection of self.

## IX.     Ninth Affirmative Defense

Hatfield's claims should be dismissed or reduced because Defendants' conduct and statements as identified by Hatfield in her Complaint were all protected by the business judgment rule. Defendants exercised good faith business judgments in their actions. Hatfield's claims are therefore barred. *See Fort Pierce Indus. Park Phases II, III & IV Owners Assoc. v. Shakespeare*, 2016 UT 28, 379 P.3d 1218.

## X.      Tenth Affirmative Defense

Hatfield's claims should be dismissed or reduced under the applicable governing documents of the HOA, including the articles of incorporation, declaration and amendments, bylaws, plat, and any such related document. For example, the CC&Rs include the following language: "The Management Committee's determination as to whether a particular activity being conducted or to be conducted violates the Rules shall be conclusive, subject to a judicial determination if any is timely sought" (¶ 6.1(e)); "The Management Committee shall use its reasonable judgment to determine whether to exercise the Association's powers to impose sanctions or pursue legal action for a violation of the Governing Documents" (¶ 6.1(i)(2)); "the Association is expressly authorized to set and collect special Assessments payable as may be determined by the Association . . . to pay for any Common Expenses" (¶ 7.10); "Special Assessments may be levied by the Association against a particular Unit and its Owner" (¶ 7.11); "To the fullest extent permitted by applicable law, neither the Management Committee or any officer of the Association shall be liable to any Owner . . . for any damage . . . claimed on account of any decision, . . . course of action, act, omission, or negligence" (¶ 21.2). As another example, the Bylaws state "No Committee Member, officer, or member of a Subcommittee shall be personally liable for any obligations of the Association or for any duties or obligations arising out of any acts or conduct of said Committee Member, officer, or Sub-Committee member performed for or on behalf of the Association" (¶ 6.1).

Her claims should also be dismissed or reduced by the applicable provisions of the Utah Community Association Act (Utah Code sections 57-8a-101–703) and by any other applicable statute or ordinance.

## XI.    Eleventh Affirmative Defense

Hatfield's claims should be dismissed because she first materially breached the CC&Rs by walking the neighborhood looking into yards and windows, following and keeping tabs on people, confronting neighbors and making demands based on the CC&Rs and rules, threatening and intimidating the Board and homeowners, verbally abusing the Board and homeowners, bombarding the Board and its agents with numerous frivolous or trivial complaints, and engaging in other such conduct amounting to a nuisance that threatens the HOA members' ability to enjoy their property. Furthermore, her damages, if any, should be offset or recouped by any sums owed by Hatfield for her wrongful conduct and breach of CC&Rs, and for any sums owed by Hatfield by way of indemnification or damages under Utah and Federal law, the articles of incorporation, declarations and amendments, bylaws, and all related documents.

## XII.    Twelfth Affirmative Defense

Hatfield's claims should be dismissed or reduced under Utah's Non-Profit Corporation Act, including but not limited to Utah Code sections 16-6a-115 and 823, under Utah Code sections 78B-4-101–103, as well as under the Federal Volunteer Protection Act (14 U.S.C. § 14501 et seq.), which limit the liability of directors of a nonprofit corporation and volunteers. For example, the Utah Non-Profit Corporation Act states that "[t]he directors, officers, employees, and members of a nonprofit corporation are not personally liable in their capacity as directors, officers, employees, and members for the acts, debts, liabilities, or obligations of a nonprofit corporation." Utah Code § 16-6a-115. Moreover, it is well settled under Utah law that "when an officer or director acts in his or her official capacity, he or she is immune from individual liability." *Salt Lake City Corp. v. Big Ditch Irr. Co.*, 2011 UT 33, ¶ 27, 258 P.3d 539.

14

### XIII.   Thirteenth Affirmative Defense

Hatfield's claims for punitive damages should be dismissed because there was no malice, intentionally fraudulent conduct, or reckless indifference or disregard for the safety of others. Her request for punitive damages must be proved by clear and convincing evidence and is subject to the protections provided under Utah Code section 78B-8-201. She must prove punitive damages by a unanimous verdict per the Sixth Amendment of the U.S. Constitution and Article I, Section 10 of the Utah Constitution.

Hatfield's claims for punitive damages should be dismissed also because any outrageous or malicious conduct (which is denied) is likely to be deterred by other means. Hatfield fails to state a claim upon which enhanced, exemplary, or punitive damages can be awarded.

An award of punitive damages in this case is prohibited by at least the following provisions of the U.S. and Utah Constitutions: The Due Process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, section 7 of the Utah Constitution; the takings clauses of the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I, section 22 of the Utah Constitution; the equal protection clause of the Fourteenth Amendment to the U.S. Constitution and Article I, section 24 of the Utah Constitution; the prohibitions against excessive fines and punishments contained in the Eighth Amendment to the U.S. Constitution and Article I, section 9 of the Utah Constitution; the rights given an accused by the Fifth and Sixth Amendments to the U.S. Constitution and Article I, sections 12 and 13 of the Utah Constitution; the prohibition of ex post facto laws contained in Article I, section 18 of the Utah Constitution; and the open courts provision, Article I, section 11, of the Utah Constitution.

## XIV.   Fourteenth Affirmative Defense

Hatfield's claims should be dismissed or reduced because she didn't mitigate damages.

## XV.   Fifteenth Affirmative Defense

Defendants deny any viable Fair Housing retaliation claim. But if there were such a claim, it would arise out of a prior underlying discrimination claim against Keddington and PMI, claims that would not belong to Hatfield but would instead be derivative claims belonging to the HOA. Hatfield lacks standing and failed to follow the procedures required to assert such a claim.

## XVI.   Sixteenth Affirmative Defense

Hatfield's claims should be dismissed or reduced because the actions she complains of are protected by an absolute judicial immunity and litigation privilege. For example, the statements in the September 6th and 10th letters, and the statements in the October 2019 annual meeting, as well as others, were made in the context of litigation.

## XVII.   Seventeenth Affirmative Defense

Hatfield's Fair Housing claim should be dismissed because the Act doesn't grant the right to file a frivolous complaint in bad faith. Here, Hatfield filed a frivolous administrative complaint for religious discrimination in an attempt to manufacture a claim of retaliation.

## XVIII.   Eighteenth Affirmative Defense

Hatfield's Fair Housing claim should be dismissed because the Act doesn't apply under the facts of this case. Furthermore, Defendants' actions do not constitute interference with any rights protected by the Act and were not pursuant to any unconstitutional policy, custom, usage, rule, or regulation. A plaintiff's subjective beliefs of intentional discrimination and retaliations are insufficient to show an intentional discriminatory animus.

### XIX.   Nineteenth Affirmative Defense

Defendants incorporate by reference all defenses asserted by all other defendants in this action to the extent the defenses apply to Defendants.

### XX.   Jury Demand

Defendants request trial by jury in this action of all issues triable by jury.

### XXI.   Prayer for Relief

Having fully answered Hatfield's complaint, Defendants request that all claims against them be dismissed with prejudice and on the merits, with costs and other appropriate relief for Defendants as determined by the Court. Defendants request attorney fees under 42 U.S.C. § 3613(c)(2) (to the extent the statute applies); under the CC&Rs, including, but not limited to ¶ 18.1; under Utah Code section 78B-5-825; and on any other basis permitted by law.

### COUNTERCLAIM

The Cottages on 78th Community Association ("the HOA"), Drew Keddington, Matthew Medford, Michelle Pohlman, and PMI of Utah LLC ("PMI") hereby allege and counterclaim against Wendi Hatfield as follows.

### Parties, Jurisdiction, Venue

1.      The HOA is a nonprofit corporation and an association of owners who live within the planned united development community known as The Cottages on 78th, located in Salt Lake County, Utah.

2.      Keddington is an owner and member of the HOA, and a former member of the HOA's management committee.

3.      PMI is a Utah limited liability company operating in Salt Lake County and that has acted as the HOA's property manager beginning in October 2018 through the present.

4.      Pohlman is a former employee of PMI who handled many of the day-to-day property management affairs of the HOA while thus employed.

5.      Hatfield is an owner and member of the HOA.

6.      The Court has jurisdiction under 28 U.S.C.A. § 1367.

7.      Venue is proper in that the parties to this case all reside within this judicial district and the events complained of likewise occurred without this judicial district.

**General Allegations**

8.      The HOA and all members thereof are subject to the Declaration of Covenants, Conditions, and Restrictions for The Cottages on 78th, recorded in Salt Lake County on or about June 24, 2014 (the "Declaration").

9.      The governing body of the HOA is the Management Committee, which consists of five volunteer members (the "Board"), and which acts on behalf of the Association, directs the Association, and enforces the Declaration and community rules promulgated thereunder.

10.     The Declaration provides at Article 10.3 that nuisances, as described in the Declaration, shall not be carried out on the premises.

11.     Beginning on or about August 2016, Hatfield began engaging in activities around the community that constitute nuisances as described in the Declarations, including harassing and frightening the owners, the Board, and property management companies.

12.     Hatfield's nuisance activities have been widespread in the community and have continued on a regular basis through the present time, and she will not stop.

13.    Those activities have caused damage to the HOA, its members, and property managers, and the counterclaimants are entitled to recover monetary damages as well as injunctive relief against Hatfield to prevent her from continuing her inappropriate conduct.

14.    Moreover, beginning in August 2019, Hatfield filed complaints of religious discrimination against Keddington, PMI, and the HOA in the Utah Labor Commission.

15.    Such complaints were sham complaints that lacked evidence and were not brought with the intent to prosecute; rather the intent was to abuse administrative, civil, and legal processes.

16.    That abuse of process and wrongful use of civil and administrative proceedings has caused substantial financial and reputational harm to Keddington, PMI, Pohlman, and the HOA, for which they are entitled to recover damages.

### FIRST CAUSE OF ACTION

(By the HOA: Breach of Declaration / Enforcement)

17.    The other allegations set forth in this Counterclaim are incorporated herein.

18.    The HOA is a homeowners' association subject to the Community Association Act, at Utah Code Ann. 57-8a-101, et seq.

19.    Hatfield is a member of the HOA, by virtue of her ownership of a residence within in the community.

20.    The HOA was established through the preparation, execution and recordation of the Declaration.

21.    Hatfield, as a member of the HOA, is subject to, and bound by, the provisions of the Declaration.

22.     The HOA has the power and the right to enforce the Declaration, bylaws, and community rules through the Board.

23.     The Declaration is a binding document on Hatfield that is enforceable at common law, in contract, and under Utah Code Annotated sections 57-8a-101 et seq., including 57-8a-212.5, among others.

24.      The Declaration provides at Article 10.3 that nuisances, as described in the Declaration, shall not be carried out on the premises: "Nuisance. No noxious or offensive activity shall be carried on upon the Project, nor shall any activity that might be or become an annoyance or nuisance to the Owners or Occupants be permitted to interfere with their rights of quiet enjoyment or increase the rate of any insurance or decrease the value of the Units. No Owner or Occupant shall engage in activity within the Project in violation of any law, ordinance, statute, rule or regulation of any local, county, state or federal body."

25.     Beginning no later than August 2016, Hatfield began engaging in activities around the community that constituted nuisances as described in the Declarations.

26.     Those activities include, without limitation:

    a.  Interference with—and increasing the cost of—the services provided by the HOA to members by overwhelming the property managers and Board with excessive reports of alleged misconduct and rule/Declaration violations, touching on such subjects as the Board's or property manager's behavior, trash, parking, inspections, holiday decorations, pets, fixtures, furniture, and numerous other issues, which reports are also often redundant, retaliatory, targeted to harass, trivial, derogatory, unnecessary, impracticable or impossible to address, false, misleading, inaccurate, or otherwise inappropriate. Hatfield's complaints to the HOA's property managers have exceeded the number of complaints made by all other owners in the community combined, and it is not feasible for the Board to continue to operate under such conditions.

    b.  Confronting owners and their guests and children directly in their homes, streets, limited common area, playgrounds, by email, by text and otherwise to make demands and to demand compliance with her view of how the rules and

Declaration should be administered and how the HOA should be run, including driving kids away from the playground, confronting young children, knocking doors to confront owners in their homes, yelling in the streets, and engaging in other threatening, intimidating, or socially inappropriate confrontations with members and their guests.

c.  Excessive surveillance and monitoring of the personal affairs and spaces of the members of the community by researching their personal lives using her experience as an insurance professional, looking into their homes, windows, fenced areas, and garages, conducting intrusive drive-bys or walks around the neighborhood to inspect and monitor, monitoring members from her home, physically following owners around the community, all so that she can support her improper reporting compulsion and so that she can harass and intimidate the community members of her choice.

d.  Circulating false, disparaging, and defamatory information to members of the community and threatening litigation against the property manager, HOA, HOA members, and the Board without a proper basis for the purpose of harming them, frightening them, controlling who participates on the Board, and controlling the community.

e.  Harassing owners based on their personal values, such as LGBT marriages.

f.  Driving recklessly through the community.

g.  Attempting to silence members from bringing to the Board's attention (or maintaining) complaints they make about Hatfield's harassment and intimidation.

h.  Making frivolous and costly records requests on the HOA.

i.  Filing frivolous and costly sham discrimination complaints for the improper purpose of manufacturing and filing a sham federal retaliation lawsuit.

j.  Tendering her own complaints and lawsuits to the HOA's insurance carrier without authority from the Board, and doing so under her credentials as an insurance professional with Cincinnati Insurance to make it appear that the tender was made under the auspices of Cincinnati's insurance business.

k.  Harassing PMI with inappropriate emails and dictating to them and the Board how they should operate their business and manage the HOA.

l.  Violating other Declaration provisions, such as, without limitation, Articles 5.6, 6.1(e), in engaging in the foregoing conduct and by forming a "Sub-Board" to usurp and interfere with the activities of the HOA and its legitimate Board.

m.  Other activities constituting a nuisance.

27.  Hatfield's nuisance activities have been widespread in the community and have continued on a regular basis since at least August 2016 through the present time.

28.     Those activities have been, individually and collectively, nuisances and improper acts that are noxious, offensive, and annoying in ways that have interfered with the rights of quiet enjoyment of numerous homeowners, have been violations of, at a minimum, the common law of the State of Utah, will increase the rate of insurance for the HOA, and potentially may decrease the value of Units.

29.     All those activities constitute nuisances under the Declaration; Hatfield is thereby breaching the Declaration and causing damages to the HOA and its members thereby.

30.     Hatfield knowingly, intentionally, and recklessly engages in the nuisance activities for the purpose and intent of causing financial, emotional, and operational harm to the members of the HOA, the Board, its property management companies, and the HOA as a whole.

31.     Hatfield's nuisance activities have caused financial harm to the HOA, including without limitation driving up the cost of property management services, driving up the cost of legal services and attorney's fees, and driving up insurance premiums, all as a result of Hatfield's nuisance conduct.

32.     Not all the damages being caused by Hatfield can be compensated monetarily, and the HOA will therefore suffer irreparable harm if Hatfield is not enjoined from the nuisance activities.

33.     Hatfield has been repeatedly notified and warned that the type of nuisance activities that she engages in are improper and in breach of the Declaration, but Hatfield has not stopped.

34.     It is unlikely that Hatfield will voluntarily cease engaging in those nuisance activities without a court order enjoining her conduct.

35.    As to irreparable harm:

 a. members of the HOA suffer on an ongoing basis because of Hatfield's ongoing nuisances and breaches of the Declaration, which impair their quiet enjoyment in their homes and community.

 b. the HOA and its members suffer from turnover of homeowners, Board members, and property managers, as Hatfield drives them out with her nuisance activities.

 c. the HOA's ability to enforce the Declaration and community rules is jeopardized because of the nuisance activities which exhaust the time and resources of the volunteer Board and overwhelm the property management companies.

 d. the risk is high that the Board will ultimately dissolve and the HOA will cease to properly function for the benefit of the members given the pressures applied by Hatfield on the volunteer Board with her excessive reporting, threats of litigation, frivolous discrimination and legal filings, and other harassment.

 e. through stigma or otherwise, the value of the units within the community are in danger of falling as a direct result of Hatfield's nuisance activities, as potential buyers rightfully may fear that they will be unfairly harassed or sued if they buy into the community.

 f. the HOA and its members are subject to other irreparable harm as a result of Hatfield's nuisance activities.

36.    Overall, the harm and risks to the HOA and members thereof constitute irreparable harm under the law and justify this court entering an order and injunction that enjoins Hatfield from continuing the nuisance activities identified above.

37.    The HOA has complied with the Declaration in all relevant and material respects.

38.    The HOA is entitled to general and special damages as outlined above, consequential damages, as well as costs, pre and post judgment interest, and attorney's fees under Article 18.1 and all other applicable articles of the Declaration and bylaws, the third-party tort rule, and otherwise under the law.

## SECOND CAUSE OF ACTION

(By the HOA, Keddington, PMI, and Pohlman: Wrongful Use of Civil / Administrative Proceedings, or in the Alternative, Abuse of Process)

39.    The other allegations set forth in this Counterclaim are incorporated herein.

40.     On or about April 10, 2019, the HOA sent Hatfield a letter warning her that her nuisance activities constituted a violation of Section 10.3 of the Declaration.

41.     On or about August 8, 2019, the HOA sent Hatfield another letter notifying her that she was being fined and individually assessed for her ongoing nuisance behavior, which had not ceased despite the earlier warning letter in April.

42.     Hatfield retaliated by conceiving an improper scheme to abuse civil, administrative, legal, and quasi-judicial processes, using the Utah Labor Commission as her selected forum for abuse.

43.     Her scheme was intended to abuse those processes to the detriment and harm of the HOA, Pohlman, PMI, and Keddington, who she believed were responsible for interfering with her nuisance activities.

44.     Specifically, Hatfield filed a complaint on August 13, 2019 with the Utah Anti-Discrimination Division of the Utah Labor Commission (the "Commission"), alleging that the HOA, PMI, and Keddington had religiously discriminated against her.

45.     Per the Restatement (Second) of Torts § 680, the Commission is an administrative body with adjudicative power, and with authority to take action adversely affecting the legally protected interests of Hatfield, HOA, PMI, and Keddington as it relates to the law of discrimination.

46.     As an official government adjudicative body, a discrimination claim before the Commission is a formal adjudicative proceeding akin to legal process and is also tantamount to a civil proceeding which involves, at a minimum, the filing and service of a complaint, a response

and defense by the respondents, and then the Commission's adjudication of rights and responsibilities of the parties under the law.

47.     The filing of the discrimination complaint constituted the filing of civil and/or administrative adjudicative actions, and invoked legal and/or quasi-judicial processes.

48.     In filing the religious discrimination action before the Commission, Hatfield acted without probable cause to believe that the charge or claim on which the proceedings were based were well founded, and acted primarily if not exclusively for a purpose other than that of securing appropriate decisions by the Commission.

49.     The religious discrimination complaint was entirely pretextual and not filed for the purposes for which it was designed; Hatfield had no intention of prosecuting her religious discrimination allegations and getting a decision by the Commission.

50.     The allegations in the religious discrimination complaint were false and lacked any evidentiary support, because, among other things and without limitation, the HOA Board, PMI, and Keddington had always dealt with Hatfield in a manner free of religious influence, had never discriminated against her for any reason let alone for her religion, were of the belief that she was in fact "Mormon" or didn't know what her religious beliefs were one way or the other, were non-"Mormons" or non-practicing "Mormons" themselves (many of them), and had received from her no similar written complaints of religious discrimination prior to the April 2019 warning letter despite her prior prolific history of complaining about HOA management.

51.     She knew that her allegations in the religious discrimination complaint were false and lacked evidentiary support, knew that she lacked probable cause, knew that she could not

prevail on the claim, and knew that she would voluntarily dismiss the religious discrimination claims as soon as her improper and ulterior purposes had been accomplished.

52.    Hatfield's ulterior and improper purposes in filing her religious discrimination complaint in the Commission include but are not limited to:

a.  retaliating against the HOA, PMI, and Keddington because of the fines and warning letter.
b.  continuing her pattern of nuisance activities to harass, intimidate and harm HOA, PMI, and Keddington.
c.  attempting to chill any further action to be taken against her under the Declaration;
d.  posturing so that any action taken by the HOA or its agents to enforce the Declaration would appear as "retaliation" chronologically under the Fair Housing Act, so that she could bypass her spurious claims of religious discrimination and sue for retaliation alone.
e.  manufacturing a sham Fair Housing Act retaliation claim to file in federal court as would make available attorney's fees, a remedy otherwise unavailable to her.
f.  acting pursuant to other wrongful, ulterior purposes.

53.    On August 27 and 28, 2019, using her insurance credentials as an insurance professional with Cincinnati Insurance, Hatfield tendered her own discrimination complaint and small claims lawsuit to the HOA's insurance carrier without permission from the HOA.

54.    The HOA's broker was caused to believe that it was a Cincinnati Insurance related matter emanating from Hatfield as a credentialed claims adjuster in the course of her employment with Cincinnati.

55.    In response to the tender apparently emanating from Cincinnati, counsel for the HOA sent a letter to Cincinnati on September 6, 2019 inquiring into Cincinnati's involvement in the discrimination complaint and a small claims lawsuit against the HOA that Hatfield has also tendered.

56.     On September 10, 2019, the HOA sent a letter to the community updating them on the dispute with Hatfield.

57.     True to her previous design of manufacturing a retaliation claim, she amended her religious discrimination complaint in the Commission on September 24, 2019 to include the September 6 and 10 letters, and then in a calculated move voluntarily dismissed her religious discrimination complaint, telling the commission she would now "pursu[e] my claims in federal court."

58.     Upon filing claims in federal court (the present action), Hatfield omitted her claim of religious discrimination, and instead asserted only a claim for retaliation under the FHA, consistent with her scheme to exploit the Commission proceedings solely for the purposes of manufacturing the appearance of retaliation rather than legitimately complaining about religious discrimination which could not be proven.

59.     Under all the circumstances, Hatfield's voluntary dismissal of the religious discrimination claim before the Commission is tantamount to the Commission's proceedings having terminated in favor of the HOA, Keddington, PMI, and through PMI, Pohlman.

60.     Alternatively, Hatfield's conduct amounts to an abuse of process.

61.     As set forth above, Hatfield used the proceedings before the Commission – which were, or were akin to legal process – to accomplish an improper and ulterior purpose for which the Commission's processes were not designed.

62.     Furthermore, Hatfield engaged in a number of additional willful acts in the use of the process that is not proper in the regular conduct of the proceeding, including:

> a.  Misrepresenting to the Commission that she would be re-filing her religious discrimination claim in federal court;

b. Representing to the Commission in writing on November 1, 2019 that she was withdrawing her religious discrimination claim "voluntarily and not as a result of any acts of coercion, force, threats, harassment, duress, or intimidation or fear of intimidation on the part of any person" while at the same time representing before this Court in paragraphs of 1 and 27 (2nd paragraph 27, page 25) of her Complaint that counterclaimants caused her to abandon her discrimination complaint;

c. Seeking to entrap the HOA or cause it to refrain from further enforcement activity against Hatfield;

d. Manufacturing claims and remedies not available to Hatfield but for her abuse of the proceedings before the commission;

e. Creating an artifice for avoiding the merits of the religious discrimination claim;

f. Filing the religious discrimination claim while knowing it was frivolous;

g. Filing the religious discrimination claim in contravention of the derivative action rules since the claim belongs to the HOA and not Hatfield individually;

h. Perpetuating her nuisance activities to harass and oppress the HOA and its members in violation of the Declaration;

i. Tendering her lawsuits to the HOA's insurance carrier under the auspices of her insurance employer;

j. Engaging in other willful acts in the use of the process not proper in the regular conduct of the proceeding.

63.    Hatfield's conduct caused damage to HOA, PMI, Pohlman, and Keddington by causing them to unnecessarily incur substantial attorney's fees in preparing a defense to the sham religious discrimination claim, to incur costs and attorney's fees in defending against the present sham retaliation suit, in driving up liability insurance premiums for the HOA, damaging their reputations, and causing mental anguish and humiliation; they are entitled to recover compensatory, general, and special damages accordingly, in an amount to be proven at trial.

64.    Hatfield misused and abused civil, quasi-judicial, administrative, and legal proceedings and processes, and did so intentionally, knowingly, willfully, maliciously, and with a knowing, conscious, and reckless indifference and disregard to the rights of HOA, PMI, Pohlman, and Keddington, entitling them to an award of punitive damages against Hatfield.

## **PRAYER FOR RELIEF**

WHEREFORE, the HOA, Keddington, PMI, and Pohlman pray for relief on the Counterclaim as follows:

1.      On the First Cause of Action: damages to the HOA to be established at trial, including general and special damages, attorney's fees, consequential damages, and all relief requested in the body of the First Cause of Action above.

2.      On the First Cause of Action: an order and injunction the enjoins Hatfield from continuing the nuisance activities identified in this Counterclaim.

3.      On the Second Cause of Action: damages to Keddington, the HOA, PMI, and Pohlman to be established at trial, including general and special damages, attorney's fees, punitive damages, and all other relief requested in the body of the Second Cause of Action above.

4.      On all Causes of Action: for pre and post judgment interest as allowed by law; for attorney's fees under the fees provision of the Declaration, the third-party tort rule, the Fair Housing Act, and all other sources of law.

5.      On all Causes of Action: such further and additional relief as is just.

## **JURY DEMAND**

The HOA request that all issues in the Counterclaim be tried to a jury.

DATE: May 28, 2020.

STRONG & HANNI

/s/ Byron G. Martin

_____

Byron G. Martin
Axel Trumbo
*Attorneys for Cottages on 78th Community Association, Drew Keddington, Matthew Medford, Michelle Pohlman and PMI of Utah, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2020, a true and correct copy of the foregoing **AMENDED ANSWER BY THE COTTAGES ON 78th COMMUNITY ASSOCIATION, DREW KEDDINGTON, MATTHEW MEDFORD, MICHELLE POHLMAN, AND PMI OF UTAH LLC, AND COUNTERCLAIM** was served, by the method indicated below, to the following:

| | | |
|---|---|---|
| John D. Morris | (X) | Electronic Filing |
| Lauren DeVoe | ( ) | U.S. Mail, Postage Prepaid |
| MORRIS SPERRY | ( ) | Hand Delivered |
| 7070 South Union Park Center, Ste 220 | ( ) | Overnight Mail |
| Midvale, UT 84047 | ( ) | Facsimile |
| john@morrissperry.com | ( ) | Email |
| lauren@morrissperry.com | | |
| *Attorneys for Plaintiff* | | |
| | | |
| James D. Gilson | (X) | Electronic Filing |
| Melinda H. Birrell | ( ) | U.S. Mail, Postage Prepaid |
| DURHAM JONES & PINEGAR, P.C. | ( ) | Hand Delivered |
| 111 South Mail Street, Suite 2400 | ( ) | Overnight Mail |
| Salt Lake City, UT 84111 | ( ) | Facsimile |
| jgilson@djplaw.com | ( ) | Email |
| mbirrell@djplaw.com | | |
| *Attorneys for Defendant Dave Ruprecht* | | |
| | | |
| Keith A. Call | (X) | Electronic Filing |
| Scott A. Elder | ( ) | U.S. Mail, Postage Prepaid |
| Kendra M. Brown | ( ) | Hand Delivered |
| SNOW CHRISTENSEN & MARTINEAU | ( ) | Overnight Mail |
| 10 Exchange Place, 11th Floor | ( ) | Facsimile |
| PO Box 45000 | ( ) | Email |
| Salt Lake City, UT 84145-500 | | |
| kcall@scmlaw.com | | |
| sae@scmlaw.com | | |
| kmb@scmlaw.com | | |
| intakeclerk@scmlaw.com | | |
| *Attorneys for Defendant Miller Harrison LLC and Douglas Shumway* | | |

/s/ Joan M. Pearson