**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**May 1, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

---

WENDI HATFIELD, an individual,

    Plaintiff Counterclaim Defendant - Appellant,

v.

THE COTTAGES ON 78TH COMMUNITY ASSOCIATION, a Utah nonprofit corporation; DREW KEDDINGTON, an individual; MICHELLE POHLMAN, f/k/a Michelle Ainge, an individual; PMI OF UTAH, a Utah limited liability company; MATTHEW MEDFORD, an individual,

    Defendants Counterclaimants – Appellees,

MILLER HARRISON, LLC, a Utah limited liability company; DAVE RUPRECHT, an individual; DOUGLAS SHUMWAY, an individual,

    Defendants - Appellees.

No. 21-4079
(D.C. No. 2:19-CV-00964-TS)
(D. Utah)

---

### ORDER AND JUDGMENT[*]

---

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **CARSON**, Circuit Judges.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff-Appellant Wendi Hatfield brought suit against her homeowners' association and other individual defendants, alleging retaliation under the Fair Housing Act (FHA), invasion of privacy, defamation, tortious interference with economic relations, and civil conspiracy. After the district court dismissed all of Ms. Hatfield's claims, Defendants moved for attorneys' fees and costs.

The district court granted in part Defendants' motion for attorneys' fees pursuant to 42 U.S.C. § 3613(c)(2). Specifically, the district court determined that Ms. Hatfield's previously dismissed retaliation claim under the FHA was frivolous and brought in bad faith. Furthermore, the district court found Ms. Hatfield's counsel's behavior to be concerning because counsel appeared to encourage Ms. Hatfield to file meritless claims in court. As such, the district court directed Ms. Hatfield's counsel to show cause as to why the court should not sanction him pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Ms. Hatfield now appeals the district court's order granting attorneys' fees to Defendants and directing Ms. Hatfield's counsel to show cause as to why the court should not sanction him pursuant to Rule 11. Ms. Hatfield also requests that we reassign the case to a new judge on remand. We **affirm** the district court's decision to award attorneys' fees and its determination of the amount of attorneys' fees to be awarded. Furthermore, we **dismiss for lack of jurisdiction** Ms. Hatfield's appeal of the district court's Rule 11 Show Cause Order, as it is not a final appealable order under 28 U.S.C. § 1291. Finally, we **deny** Ms. Hatfield's request for reassignment as moot, as there is no ground for a determination of remand.

# I

## A

To understand this attorneys' fee appeal, one must understand the proceedings in the related merits suit. *See Hatfield v. Cottages on 78th Cmty. Ass'n* (*Hatfield I*), No. 21-4035, 2022 WL 2452379 (10th Cir. July 6, 2022); Aplt.'s App. at 299–325 (Mem. Decision and Order on Pending Mots., dated Mar. 1, 2021). Ms. Hatfield is a homeowner in The Cottages on 78th (the "Community"), a planned unit development in Midvale, Utah. The development is governed by The Cottages on 78th Community Association ("HOA"), of which Matthew Medford was a member. The HOA acts through a five-member Management Committee ("Board"), on which Drew Keddington served. PMI of Utah ("PMI") was the HOA's property manager, and Michelle Pohlman was the PMI employee who helped manage the HOA. The HOA, Mr. Medford, Mr. Keddington, PMI, and Ms. Pohlman are referred to as the "HOA Defendants."[1] Douglas Shumway and the law firm of Miller Harrison, LLC—collectively the "Attorney Defendants"—served as legal counsel to the HOA Defendants.

Beginning in August 2016, Ms. Hatfield exhibited behavioral issues in the Community. She allegedly surveilled homeowners, drove recklessly through the Community, made "unsubstantiated complaints against neighbors, and act[ed]

---

[1] Dave Ruprecht—a former Board member—was also a HOA Defendant in the merits action. However, he does not seek attorneys' fees and is thus not a party in this appeal.

aggressively toward neighbors and the Board." Aplt.'s App. at 300–01. As a result,

with Mr. Shumway's assistance, the Board drafted and sent a warning letter to Ms.

Hatfield in April 2019. *See id.* at 69–71 (Warning of Violation, dated Apr. 10, 2019).

Two days later, Ms. Hatfield responded to the warning letter through her attorney.

She denied the various allegations, demanded the Board withdraw its warnings, and

made an extensive records request.

Seeing no change in her behavior, the Board—on August 8, 2019—fined and

assessed Ms. Hatfield $2,231.25 for continued violations of the HOA's rules. *See id.*

at 72–73 (Notice of Fines and Individual Assessment, dated Aug. 8, 2019). In

response, on August 13, 2019, Ms. Hatfield filed a complaint with the Utah

Antidiscrimination and Labor Division ("UALD"). *See id.* at 62–65 (Housing

Discrimination Compl., filed Aug. 13, 2019). Specifically, she alleged that the HOA,

Mr. Keddington, and PMI violated the Utah Fair Housing Act by engaging in

religious discrimination and retaliation. *See id.* at 64. Two days later, Ms. Hatfield

also filed a small-claims complaint against the HOA, alleging that the HOA had

"commenced and prosecuted a groundless and improper enforcement action,

including demanding over $2,000 for their attorney fees and causing [her] to incur

attorney fees." *Id.* at 67 (Small Claims Aff. and Summons, filed Aug. 15, 2019); *see

also Hatfield I*, 2022 WL 2452379, at *2.

At the time, Ms. Hatfield was an insurance professional at Cincinnati Financial

("Cincinnati"). Between August 27–28, 2019, Ms. Hatfield used her work email to

tender her UALD and small-claims actions to the HOA's insurance broker—without

the HOA's knowledge or permission.  *See* Aplt.'s App. at 75 (Email from Ms. Hatfield to the Buckner Company, dated Aug. 27, 2019); *id.* at 77 (Email from Ms. Hatfield to the Buckner Company, dated Aug. 28, 2019).  This led the HOA's insurance broker to think that the claims were Cincinnati-related matters.  Consequently, on September 6, 2019, Mr. Shumway sent a letter to a Cincinnati employee to clarify Cincinnati's involvement in the two actions against the Association ("September 6th Letter").  *See id.* at 56–57 (Letter from Mr. Shumway to Cincinnati, dated Sept. 6, 2019).

Mr. Shumway explained in his letter that Ms. Hatfield was involved in a dispute with the Association regarding her behavior and, after filing both actions, had used her work email to contact the HOA's insurance agent demanding that her complaints be tendered to the Association's insurance carriers.  Mr. Shumway stated that if Cincinnati was not involved in the dispute, then "Ms. Hatfield's use of her work email and cred[en]tials to tender her own claims [was] entirely unprofessional." *Id.* at 57.  Mr. Shumway attached Ms. Hatfield's UALD and small-claims complaints, the Board's warning letter, the letter fining Ms. Hatfield $2,231.25, and Ms. Hatfield's emails tendering her complaints to the HOA's insurer.  *See id.* at 56–57.

On September 10, 2019, the Board sent HOA members a letter about an upcoming special assessment ("September 10th Letter").  *See id.* at 80 (Special Assessment Letter, dated Sept. 10, 2019).  In the letter, the Board explained that it felt it important to "impress upon each owner a clear understanding of this assessment." *Id.*  The letter stated that the HOA had incurred and would continue to

incur legal expenses due to Ms. Hatfield's record requests and actions against the HOA. The Board indicated that it wished to end the dispute but noted that "[c]losure to this conflict rests solely with Ms. Hatfield since she has been the party to instigate the records request, the Labor Board investigation, and now this new claim against her community." *Id.*

On October 9, 2019, the HOA held its annual meeting and, among other things, discussed the special assessment ("Annual Meeting"). HOA representatives indicated that the HOA had tendered claims for both complaints to its insurer and did not anticipate that the HOA or its members would incur future legal expenses. Ms. Pohlman also praised the HOA's financial health and indicated that the HOA had not budgeted any funds for legal expenses for the upcoming year.

Various HOA members made disparaging comments about Ms. Hatfield at the Annual Meeting, including complaints "that the members unfairly had to pay legal expenses because of one person's actions and asking what rights they had to stop it." *Id.* at 303. Owners also indicated that they were angry, afraid to go outside, and no longer wanted to live in the community. Mr. Shumway responded that "the best way to mitigate that and quash the negativity is to band together, get out together, get to know each other, and band together against whatever you believe is bringing your community down." *Id.* at 303–04. Ms. Pohlman stated that if anyone felt unsafe, they had the right to call the police and file a report. She also encouraged members to come to Board meetings to express frustrations or concerns. Ms. Hatfield has

since felt uncomfortable, ostracized, and unsafe in the Community.  *See id.* at 32
(Compl., filed Dec. 5, 2019).

## B

In November 2019, Ms. Hatfield voluntarily withdrew her UALD and small-
claims complaints.  Then, in December 2019, she filed a federal complaint in the
United States District Court for the District of Utah, asserting five claims: (1)
retaliation in violation of the FHA; (2) invasion of privacy and intrusion upon
seclusion and private affairs; (3) defamation; (4) tortious interference with economic
relations; and (5) civil conspiracy.  *See id.* at 21–54.  On April 23, 2020, the district
court dismissed Ms. Hatfield's claim for tortious interference and civil conspiracy
against Attorney Defendants.  *See id.* at 175–86 (Mem. Decision and Order on
Pending Mots., filed Apr. 23, 2020).  On March 1, 2021, the district court granted the
Defendants' motion for judgment on the pleadings on Ms. Hatfield's remaining
claims.  *See id.* at 299–325.

Defendants then moved for attorneys' fees and costs, which the district court
granted in part on June 10, 2021.  *See id.* at 544–55 (Mem. Decision and Order on
Mots. for Attorney's Fees and Rule 11 Order to Show Cause, filed June 10, 2021).
Specifically, the district court concluded that Ms. Hatfield's tort claims (i.e., her state
law claims)—invasion of privacy, defamation, tortious interference, and civil
conspiracy—did not give rise to an award of attorneys' fees and costs.  However, the
district court awarded attorneys' fees and costs to Defendants pursuant to 42 U.S.C.
§ 3613(c)(2) of the FHA.

7

The district court's award of fees was predicated on its finding that Ms. Hatfield's "complaint not only failed to state an FHA retaliation claim but conclusively showed that [Ms.] Hatfield was not entitled to relief." *Id.* at 547. As such, the district court concluded that Ms. Hatfield's "FHA claim was frivolous and groundless at the outset, warranting an award of attorney's fees." *Id.* at 549. The district court further bolstered its decision to award attorneys' fees by finding that Ms. Hatfield brought her FHA claim in bad faith. Specifically, the court cited a "sequence of events prior to and during this litigation" that "bear hallmarks of vindictive weaponizing of the legal system, not a good-faith attempt to vindicate rights." *Id.*

The district court also noted that Ms. Hatfield's "counsel appeare[d] to have enabled—indeed, encouraged—a neighborhood dispute to escalate to a groundless federal case and knowingly filed meritless claims in the court. Counsel's communications with opposing counsel were unreasonable, the claims he filed were frivolous, and key factual contentions were baseless." *Id.* at 554. As such, the district court ordered Ms. Hatfield's counsel to show cause as to why the court should not sanction him pursuant to Rule 11 of the Federal Rules of Civil Procedure. Ms. Hatfield appealed from both the district court's merits ruling dismissing her claims and its order granting attorneys' fees and issuing a Rule 11 Show Cause Order.[2]

---

[2]        In a recently issued unpublished decision, we affirmed the district court's judgment dismissing Ms. Hatfield's claims. *See Hatfield I*, 2022 WL

**II**

Ms. Hatfield raises four issues in this appeal.  First, she argues that the district court abused its discretion in awarding attorneys' fees to Defendants.  Specifically, she claims her FHA retaliation claim was neither frivolous nor brought in bad faith. Second, she contends that the district court abused its discretion in determining the amount of attorneys' fees awarded to Defendants.  Third, Ms. Hatfield alleges that the district court erred in ordering her counsel to show cause as to why the district court should not sanction him under Rule 11.  Finally, Ms. Hatfield requests that we reassign the case to a new judge on remand.

After carefully considering the briefs, we first conclude that the district court did not abuse its discretion in awarding attorneys' fees to Defendants.  Specifically, the district court's determination of frivolity and bad faith were supported by its factual findings—to which we owe significant deference.  Furthermore, we hold that the district court did not abuse its discretion in determining the amount of fees to be awarded to Defendants.  In particular, the district court exercised its discretion to significantly reduce the award of attorneys' fees in a manner that benefitted Ms. Hatfield.  We also lack jurisdiction to consider Ms. Hatfield's appeal from the district court's Rule 11 Show Cause Order, as it is not a final appealable order under 28

---

2452379, at *1.  The only outstanding issues remaining in this matter involve the district court's order granting attorneys' fees and issuing a Rule 11 Show Cause Order.

U.S.C. § 1291.  As such, Ms. Hatfield's request for reassignment is moot, as there is
no ground for a remand.

### III

In a civil action for violations of the FHA, "the court, in its discretion, may
allow the prevailing party, other than the United States, a reasonable attorney's fee
and costs."  42 U.S.C. § 3613(c)(2).  The Supreme Court has held that in a federal
civil rights case, "a district court may in its discretion award attorney's fees to a
prevailing defendant . . . upon a finding that the plaintiff's action was frivolous,
unreasonable, or without foundation, even though not brought in subjective bad
faith."  *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S.
412, 421 (1978);[3] *see also Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d
44, 50 (2d Cir. 2012) (applying *Christiansburg*'s standard governing attorney-fee
awards to prevailing defendants in an FHA action); *Bryant Woods Inn, Inc. v.
Howard Cnty., Md.*, 124 F.3d 597, 606 (4th Cir. 1997) (same).[4]  "[I]f a plaintiff is
found to have brought or continued such a claim in *bad faith*, there will be an even

---

[3]     The parties do not dispute that *Christiansburg* applies in this FHA
action.  *See* Aplt.'s Opening Br. at 21 (citing *Christiansburg* and invoking its
standard governing attorney-fee awards for prevailing defendants); Aplees.' Resp.
Br. at 8 (same).

[4]     Ms. Hatfield cites a Sixth Circuit opinion that purports to stand for the
proposition that a fee award to a prevailing defendant "must be limited to truly
egregious cases of misconduct."  Aplt.'s Opening Br. at 20 (quoting *Jones v. Cont'l
Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)).  However, in *Christiansburg*, the
Supreme Court made clear that subjective bad faith or misconduct is not required for
a statutory award of attorneys' fees.  *See* 434 U.S. at 421.

stronger basis for charging him with the attorney's fees incurred by the defense." *Christiansburg*, 434 U.S. at 422.

"We review a district court's attorneys' fees award for abuse of discretion.  In doing so, we review the district court's application of legal principles de novo, and we review the district court's findings of fact for clear error." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1126 (10th Cir. 2016) (quoting *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1184 (10th Cir. 2011)).

## A

Ms. Hatfield first contends that her FHA retaliation claim was not frivolous.  *See* Aplt.'s Opening Br. at 21–29.  Specifically, Ms. Hatfield claims that the district court "erred when it concluded that neither the September 6th letter, the September 10th letter and Notice of Assessment, nor the statements made at the [HOA's] annual meeting constituted an adverse action." *Id.* at 22.[5]  Alternatively, Ms. Hatfield contends that even if her FHA claim lacked merit, "[m]erely being unable to ultimately prevail is insufficient reasoning for assessing attorney fees and costs against a plaintiff under [the FHA]." *Id.*  As such, she claims the district court's "conclusion that Ms. Hatfield not only failed to state a claim, but asserted a frivolous claim, was in error and should be reversed." *Id.* at 29.

---

[5]       Both parties appear to agree that if we had reversed the district court's dismissal of Ms. Hatfield's FHA retaliation claim in the merits appeal, we would need to reverse the district court's grant of attorneys' fees as well.  However, as noted *supra* note 2, we affirmed the district court's dismissal of Ms. Hatfield's FHA retaliation claim.  *See Hatfield I*, 2022 WL 2452379, at *8–10.

Defendants respond that Ms. Hatfield's FHA claim "was frivolous because the

alleged retaliatory acts—sending the September 6 letter, September 10 letter, and

notice of assessment—'were clearly justified, not directed at [Ms.] Hatfield, and not

retaliatory.'"  Aplees.' Resp. Br. at 9 (quoting Aplt.'s App. at 547).  Furthermore,

Defendants claim that Ms. Hatfield failed to present any evidence rebutting

Defendants' evidence and arguments that her claim was frivolous from the outset.

*See id.* at 10–11.  As such, Defendants assert that the district court did not abuse its

discretion in determining that Ms. Hatfield's FHA retaliation claim was frivolous.

*See id.* at 9.  We conclude that Defendants have the better of this argument.

"To prove a § 3617 retaliation claim, a plaintiff must show that '(1) she is a

protected individual under the FHA, (2) she was engaged in the exercise or

enjoyment of her fair housing rights, (3) the defendants coerced, threatened,

intimidated, or interfered with the plaintiff on account of her protected activity under

the FHA, and (4) the defendants were motivated by an intent to discriminate.'"

*Hatfield I*, 2022 WL 2452379, at *8 (quoting *Bloch v. Frischholz*, 587 F.3d 771, 783

(7th Cir. 2009)).[6]

---

[6]    The district court articulated a different standard in its decision
dismissing Ms. Hatfield's FHA retaliation claim.  *See* Aplt.'s App. at 307 ("To show
retaliation under the FHA, a plaintiff must demonstrate that '(1) she engaged in a
protected activity; (2) she suffered an adverse action in the form of coercion,
intimidation, threats, or interference; and (3) a causal link connects the two.'"
(quoting *Haws v. Norman*, No. 2:15-CV-00422-EJF, 2017 WL 4221064, at *8 (D.
Utah Sept. 20, 2017))).  However, as we made clear in the merits appeal, we have not
adopted the district court's articulated standard.  Instead, in our cases, we have
acknowledged the four-part test from *Bloch*.  *See Hatfield I*, 2022 WL 2452379, at *8

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The term frivolous, "when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* We review the district court's determination that a claim was frivolous for abuse of discretion. *See In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1019 (10th Cir. 2017) ("The court did not abuse its discretion in determining [Plaintiff's] FCA claims were clearly frivolous."); *Yalowizer v. Town of Ranchester, Wyo.*, 18 F. App'x 745, 754 (10th Cir. 2001) (unpublished) ("[W]e cannot say that the district court abused its discretion in determining that the retaliation claim was frivolous.").

The district court concluded that Ms. Hatfield's FHA retaliation claim was frivolous, stating: "Here, [Ms.] Hatfield's complaint not only failed to state an FHA retaliation claim but conclusively showed that [Ms.] Hatfield was not entitled to relief." Aplt.'s App. at 547. Specifically, the district court found that "the allegedly offending acts—sending a notice of assessment and accompanying letter to homeowners, emailing [Ms.] Hatfield's employer, and making comments at the HOA's Annual Meeting—were clearly justified, not directed at [Ms.] Hatfield, and not retaliatory. [Ms.] Hatfield based her complaint not on facts and law but on an unreasonable interpretation of the facts and her own subjective feeling of being harmed." *Id.* As such, the district court determined that Ms. Hatfield's "complaint

n.5; *Mayo v. Performance Prop. Mgmt., Inc.*, 780 F. App'x 653, 655 (10th Cir. 2019) (unpublished). As such, we rely on the *Bloch* test here.

place[d] precisely the sort of unfair burden on Defendants that the FHA's fee-shifting provision exists to alleviate." *Id.*

The district court's determination of frivolity is supported by its factual findings.  With respect to the September 6th letter that Mr. Shumway sent to Cincinnati, the district court found that Ms. Hatfield had not "alleged that she even knows the individual in Ohio to whom it was sent or that the individual had any involvement in or control over [Ms.] Hatfield's employment. . . . Furthermore, [Ms.] Hatfield [did] not claim that the letter pressured her to withdraw her discrimination complaint." *Id.* at 309.  The district court further noted that Mr. Shumway "sent the letter nearly a month after [Ms.] Hatfield filed the discrimination complaint and only after [Ms.] Hatfield herself had used her work account and work credentials to email the Association's insurance agent.  [Mr.] Shumway's email to [Ms.] Hatfield's employer was clearly caused by [Ms.] Hatfield's emails and not by [Ms.] Hatfield's discrimination complaint." *Id.* at 312.  As such, the district court rejected Ms. Hatfield's "speculative and implausible allegation that the discrimination complaint caused the September 6th letter." *Id.* at 313.

The district court also found that the "September 10th letter and the Notice of Assessment conveyed the incontrovertible facts that [Ms.] Hatfield made a records request to the Association, [Ms.] Hatfield brought actions against the Association, and the Association had to incur legal fees.  Members of the Association had a legitimate interest in this information, and there is nothing in the wording of the letter that was derogatory about [Ms.] Hatfield or would purposefully inflame members

14

against her." *Id.* at 309.  More importantly, the district court again determined that

Ms. Hatfield did not allege "that the September 10th letter and the Notice of

Assessment dissuaded her from pursuing her discrimination complaint." *Id.* at 310.

Finally, the district court determined that none of the statements made at the

Annual Meeting "could plausibly constitute adverse actions within the meaning of

§ 3617." *Id.*  Specifically, many of the statements were simply facts "about the

Association's finances that members had a right to know . . . [a]nd others—such as

suggestions that safety issues in the community should be reported to management or

to the police and that members of the community should 'quash the negativity' in the

community and 'band together against whatever you believe is bringing your

community down'—cannot plausibly be construed as calls to rally against [Ms.]

Hatfield." *Id.*

Taken together, the district court concluded that none of these "allegedly

retaliatory statements [were] made to [Ms.] Hatfield, and [Ms.] Hatfield's assertions

that they were inflammatory and made with intent to persuade her to abandon her

discrimination complaint are unsupported and implausible." *Id.* at 309.

In the face of these factual findings, Ms. Hatfield has failed to provide

anything but conclusory statements that her retaliation claim was not frivolous.  As

the district court noted: "This motion was [Ms.] Hatfield's chance to submit evidence

to contradict Defendants' showing, and she did not do so, leaving Defendants' factual

assertions largely unopposed." *Id.* at 548.  A review of Ms. Hatfield's motions

confirms the district court's conclusion.  In her Memorandum in Opposition to

Attorney Defendants' Motion for Attorneys' Fees, she simply states "[a] reading of

the Complaint in this matter establishes that this case is not frivolous, unreasonable,

or groundless." *Id.* at 508 (Pl.'s Mem. in Opp'n to Attorney Defs.' Mot. for

Attorneys' Fees and Costs, filed Mar. 29, 2021). Ms. Hatfield offers no citations to

the record to support this proposition and fails to rebut any of the evidence

supporting the district court's findings. As such, we see no reason to disturb the

district court's factual findings—to which we owe significant deference—supporting

its award of attorneys' fees.[7] *See, e.g.*, *McInnis v. Fairfield Communities, Inc.*, 458

F.3d 1129, 1148 (10th Cir. 2006) ("[W]e note that ultimately 'an appellate court

plays [only] a limited role in reviewing a district court's award of attorneys' fees and

costs, and deference is given to a district court's judgment on the matter, since the

court is in a better position to assess the course of litigation and quality of work.'"

(second alteration in original) (quoting *Gamble, Simmons & Co. v. Kerr-McGee

Corp.*, 175 F.3d 762, 773–74 (10th Cir. 1999))); *O'Connor v. R.F. Lafferty & Co.*,

965 F.2d 893, 903 (10th Cir. 1992) ("We give deference to a district court's decision

---

[7]     Ms. Hatfield cites multiple cases in her Opening Brief which
purportedly show that the grant of attorneys' fees under the FHA is exceedingly rare.
*See* Aplt.'s Opening Br. at 28–29. However, most of the cited cases involve
instances in which the district court failed to "make sufficient factual findings to
allow [the appellate court] to review . . . the award," or where the district court failed
to apply the proper standard established in *Christiansburg*. *See, e.g.*, *Brooks v. Ctr.
Park Assocs.*, 33 F.3d 585, 587 (6th Cir. 1994) (vacating award of defendants' fees
for failure to "make sufficient factual findings to allow us to review either the award
or the allocation of liability among the parties"); *Green v. Mercy Hous., Inc.*, 991
F.3d 1056, 1058–59 (9th Cir. 2021) (vacating award where district court failed to
apply *Christiansburg*). Neither of these situations arises here.

regarding attorneys' fees.  We only overturn these decisions where the district court
abuses its discretion.").

Based on the district court's extensive factual findings, and the deference we
owe to those factual findings, we cannot say the district court abused its discretion in
determining that Ms. Hatfield's "FHA claim was frivolous and groundless at the
outset, warranting an award of attorney's fees."  Aplt.'s App. at 549.

**B**

Ms. Hatfield also contends that the district court abused its discretion when it
"summarily concluded, . . . without inquiry, that Ms. Hatfield brought her lawsuit in
bad faith."  Aplt.'s Opening Br. at 32.  Specifically, Ms. Hatfield claims that the
district court "came to this conclusion without the benefit of any deposition
testimony from Ms. Hatfield (or anyone) in the record, without an evidentiary
hearing, and apparently without accepting as true Ms. Hatfield's allegations of the
emotional harm she suffered as a result of the Defendants' actions."  *Id.*  Thus, Ms.
Hatfield asserts that the district court's "ruling that Ms. Hatfield brought the
underlying lawsuit in bad faith and that an award of Defendants' attorney fees was
warranted should be reversed."  *Id.*

Defendants respond that the "district court had before it ample evidence of
[Ms.] Hatfield's bad faith, and [Ms.] Hatfield 'd[id] not rebut Defendants' evidence
of bad faith other than to offer a conclusory statement about what she in good faith
believed her rights were.'"  Aplees.' Resp. Br. at 13 (third alteration in original)
(quoting Aplt.'s App. at 549).  Defendants further assert that Ms. Hatfield has still

17

not challenged their evidence on appeal. *See id.* As such, Defendants claim that the district court did not abuse its discretion when it determined that Ms. Hatfield acted in bad faith. *See id.* at 12. We agree.

"Where a party institutes an unfounded action wantonly or for oppressive reasons, or necessitates an action be filed or defends an action through the assertion of a colorless defense, that constitutes bad faith which is grounds for an award of attorneys' fees." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 768 (10th Cir. 1997). "A district court's determination as to whether a party has acted in bad faith is a finding of fact that we review for clear error." *F.T.C. v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006).

Although it was not required to do so, the district court bolstered its decision to award attorneys' fees by finding that Ms. Hatfield brought her FHA claim in bad faith. *See Christiansburg*, 434 U.S. at 422 ("[I]f a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense"). The district court cited a "sequence of events prior to and during this litigation" that "bear hallmarks of vindictive weaponizing of the legal system, not a good-faith attempt to vindicate rights." Aplt.'s App. at 549.

In reaching this conclusion, the district court had ample evidence of Ms. Hatfield's bad faith. Specifically, Defendants provided the court with multiple pieces of evidence demonstrating Ms. Hatfield's pattern of threatening to sue Board members and their spouses personally in order to place them "in an awkward light,"

and to force them to "spend money to defend their actions." *Id.* at 387 (Mot. for

Attorney Fees by the HOA, filed Mar. 15, 2021).  In July 2018, for example, Ms.

Hatfield sent a letter to the HOA's manager in which she demanded that certain

Board members be removed and warned that "there is talk of suit being filed." *Id.*

She went on to state that "[i]n my occupation of handling HOA lawsuits[,] it is

costly, time consuming and tarnishes reputations." *Id.*  Defendants also presented

evidence that Ms. Hatfield filed a Bar complaint against the HOA Defendants'

attorney, Mr. Shumway, made settlement demands that increased in value over time,

and demanded "extreme non-monetary concessions," including: "(1) a letter to her

employer stating [Ms.] Hatfield's claims had merit; (2) a letter to the HOA members

detailing the settlement, stating [Ms.] Hatfield's claims had merit, and stating she

could have recovered much more; and (3) an agreement from [Mr.] Keddington to

never again do anything on the HOA's behalf of [sic] serve on its board." *Id.* at 388;

*see id.* at 402–11 (emails from Ms. Hatfield's counsel to Defendants).

Ms. Hatfield did not rebut the Defendants' evidence of bad faith other than to

offer conclusory statements that her claims were made in good faith.  Specifically,

she stated that Defendants "offer zero evidence" of bad faith and that she, "in good

faith," believed her rights were violated. *Id.* at 508 (emphasis omitted).  Ms. Hatfield

provides no evidence from the record to support either of these assertions and fails to

rebut any of the Defendants' evidence supporting the district court's finding of bad

faith.  As such, we cannot say that the district court clearly erred in determining that

Ms. Hatfield acted in bad faith in bringing her FHA claim.

\*\*\*

In sum, the district court's award of attorneys' fees to Defendants did not

constitute an abuse of discretion—a conclusion which is only bolstered by the district

court's permissible finding that Ms. Hatfield brought her FHA retaliation claim in

bad faith.

## IV

Ms. Hatfield next argues that the district court "erred in its calculation of the

amount of attorney fees and costs incurred in defending against Ms. Hatfield's claim

for retaliation." Aplt.'s Opening Br. at 32–33. Specifically, Ms. Hatfield claims the

district court erred by (1) including time unrelated to the FHA retaliation claim and

(2) relying on the Defendants' entries which "were too redacted to permit anyone to

determine whether the work performed was related to the FHA claim or discretely

related to one of Ms. Hatfield's state law causes of action." *Id.* at 33.

Defendants argue that the district court "did not abuse its discretion in

calculating the fee award. The court reduced the amount of fees requested to fairly

attribute the fees to work related solely to the FHA claim. The court then

significantly reduced it to an amount that the court deemed appropriate." Aplees.'

Resp. Br. at 6. As such, Defendants claim that "[i]n a case where the HOA and

Attorney Defendants showed evidence of incurring over $135,000 in fees, it cannot

be reasonably questioned that at least $30,000 are attributable to reasonable fees

incurred directly in defending the FHA claim." *Id.* We agree.

20

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).  "And appellate courts must give substantial deference to these determinations, in light of 'the district court's superior understanding of the litigation.'"  *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *see Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) (noting that abuse of discretion "applies to both the court's decision to award fees in the first place and the court's determination of the amount of fees to be awarded").  "But the trial court must apply the correct standard, and the appeals court must make sure that has occurred.  That means the trial court must determine whether the fees requested would not have accrued but for the frivolous claim."  *Fox*, 563 U.S. at 838–39 (citations omitted).

Contrary to Ms. Hatfield's assertions on appeal, the district court expressly addressed Ms. Hatfield's concerns when computing the attorneys' fee award.  First, the district court expressly rejected Defendants' assertion that there is "basis for recovering attorney's fees for work on state-law claims that was or could have been billed separately from the FHA claim—*i.e.*, work the attorneys performed exclusively on the state-law claims."  Aplt.'s App. at 550.  With that in mind, the district court found that "not all the hours billed are compensable or reasonable.  Counsel sometimes billed for discrete work on state-law claims that is not compensable under the FHA . . . . [Furthermore], some billing entries were heavily redacted such that the

21

court cannot determine what the attorneys were doing, let alone whether it was

reasonable." *Id.* at 552. As such, the district court found these factors (i.e., the very

factors Ms. Hatfield identifies) warranted a reduction in the attorneys' fee award.

Specifically, Defendants requested a total lodestar of $138,134.50 (i.e.,

$80,852 for HOA Defendants and $57,282.50 for Attorney Defendants). The district

court—in line with the aforementioned reductions—instead calculated a total lodestar

of $96,250 (i.e., $51,250 for the HOA Defendants and $45,000 for the Attorney

Defendants). This constituted a 30% reduction in the attorneys' fee award.

Then, after explaining why it was justified in awarding that amount, the

district court made a discretionary adjustment to further lower the award of attorneys'

fees to $30,000 (i.e., $16,500 for the HOA Defendants and $13,500 for the Attorney

Defendants)—nearly an 80% reduction from Defendants' requested amount. *See id.*

at 553. Thus, the district court exercised its discretion in a manner that significantly

benefitted Ms. Hatfield. As such, Ms. Hatfield is hard pressed to claim prejudice

from the district court's computation of attorneys' fees.

Given the deference we owe to the district court's determination of attorneys'

fees, we cannot say the amount of attorneys' fees awarded to Defendants constituted

an abuse of discretion.

## V

Ms. Hatfield also contends that the district court erred in ordering her counsel

to show cause as to why the court should not sanction him under Rule 11. *See* Aplt.'s

Opening Br. at 34–40. However, regardless of the merits of Ms. Hatfield's claim, we

lack jurisdiction to consider her challenge.  The district court's *sua sponte* Rule 11

Show Cause Order requiring Ms. Hatfield's counsel to show "why [the court] should

not impose sanctions under Rule 11(b)," is not a final order because the district court

has not yet decided whether to sanction Ms. Hatfield's counsel and, if so, what the

sanction should be.  Aplt.'s App. at 555.  Indeed, Ms. Hatfield's counsel even

conceded as much at oral argument.  *See* Oral Argument 12:44–48 ("There is no final

order from the court.").  As such, because "the district court's sanction order is not

final 'until the amount has been determined,'" we do not have jurisdiction under 28

U.S.C. § 1291 to review the district court's Rule 11 Show Cause Order.  *United*

*States v. Carter*, No. 19-3199, 2019 WL 8231644, at *2 (10th Cir. Dec. 5, 2019)

(unpublished) (quoting *Turnbull v. Wilcken*, 893 F.2d 256, 258 (10th Cir. 1990)); *see*

*Turnbull*, 893 F.2d at 258 ("[A]n appeal from the award of sanctions may not be

taken until the amount has been determined."); 28 U.S.C. § 1291 ("The court of

appeals . . . shall have jurisdiction of appeals from all *final* decisions of the district

courts of the United States." (emphasis added)).[8]

---

[8]     It should also be noted that Ms. Hatfield may not have standing to
appeal the Rule 11 Show Cause Order.  "To have standing, one must be aggrieved by
the order from which appeal is taken."  *Uselton v. Com. Lovelace Motor Freight,*
*Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).  "The person sanctioned under Rule 11 is the
real party in interest on the appeal and should be the person named in the notice of
appeal."  5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND
PROCEDURE § 1337.4 (4th ed.), Westlaw (database updated April 2023); *cf. Uselton*,
9 F.3d at 854 ("Counsel have standing to appeal from orders issued directly against
them.").

Here, only Ms. Hatfield is named in the amended notice of appeal, and,
because she is not subject to the Rule 11 Show Cause Order, she likely does not have

## VI

Finally, Ms. Hatfield requests that we reassign the case to a new judge on remand.  *See* Aplt.'s Opening Br. at 40–41.  Her request for reassignment is moot because there is no ground for a remand.

## VII

For these reasons, we **AFFIRM** the district court's decision to award attorneys' fees and its determination of the amount of attorneys' fees to be awarded.  Furthermore, we **DISMISS FOR LACK OF JURISDICTION** Ms. Hatfield's appeal of the district court's Rule 11 Show Cause Order, as it is not a final appealable order under 28 U.S.C. § 1291.  Finally, we **DENY** Ms. Hatfield's request for reassignment on remand to a new judge as moot because there is no ground for a remand.[9]

Entered for the Court

Jerome A. Holmes
Chief Judge

---

standing to appeal any sanctions directed to her counsel.  *See DeLuca v. Long Island Lighting Co.*, 862 F.2d 427, 429 (2d Cir. 1998) ("Where an award of sanctions runs only against the attorney, the attorney is the party in interest and must appeal in his or her name.").

[9]     Because we did not disturb the district court's privilege rulings in *Hatfield I*, 2022 WL 2452379, at *4, the HOA's Motion to Redact is **granted**.  The Clerk of Court shall seal "Appellant's Appendix—Volume I."

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert                                              Jane K. Castro
Clerk of Court                                                  Chief Deputy Clerk

May 01, 2023

Lauren DeVoe
John D. Morris
Morris DeVoe
7070 South Union Park Center, Suite 220
Midvale, UT 84047

RE:      21-4079, Hatfield v. Cottages on 78th Community, et al
         Dist/Ag docket: 2:19-CV-00964-TS

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14
days after entry of judgment. Please note, however, that if the appeal is a civil case in which
the United States or its officer or agency is a party, any petition for rehearing must be filed
within 45 days after entry of judgment. Parties should consult both the Federal Rules and
local rules of this court with regard to applicable standards and requirements. In particular,
petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is
permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35
and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:      All Counsel of Record

CMW/mlb